IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|                                        |   |
|----------------------------------------|---|
| UNITED STATES OF AMERICA,              ) |
|                                        ) |
|     Plaintiff,     ) |
| v.                                     ) |
|                                        ) |
| MICHAEL DION ANCHRUM,                  ) |
|                                        ) |
|     Defendant.     ) |
| _____ ) Case No.3:06-CR-00085-01 TMB |

## **ANCHRUM'S SENTENCING MEMORANDUM**

### **I**
### **Local Rule 32.1(d) Statements**

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

A. Anchrum opposes the PSR:

(1) He should be granted departures because his criminal history score significantly overstates the seriousness of his criminal history, and because he suffered extreme and significant abuse and neglect as a child.

(2) All statements in the PSR that Anchrum attempted to run over SA2 or that he accelerated towards SA2 in an apparent attempt to run over SA2 should be stricken. (See paragraphs 19, 26, 36, 41, and 43). Anchrum pled to a violation of 18 U.S.C. 111(a)(1)(b), which is committed when a defendant assaults, impedes, interferes with, or resists a federal officer. Anchrum, at page 12 of his Plea Agreement explains clearly what happened.. And, indeed,

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 1

there was no intention on Anchrum's part to strike or injure the officer. He simply tried to escape.

(3) Paragraph 36, which adds 6 points (assault on federal officer in a manner creating a substantial risk of bodily injury) and Paragraph 41, which adds 4 points (use of a dangerous weapon) constitute double counting and overstate the seriousness of the offense.

(4) Paragraph 43, which adds 6 points (assault on federal officer in a manner creating a substantial risk of bodily injury) and Paragraph 41, which adds 4 points (use of a dangerous weapon) constitute double counting and overstate the seriousness of the offense.

(5) Paragraph 51, which adds 6 points (assault on federal officer in a manner creating a substantial risk of bodily injury) and Paragraph 49, which adds 4 points (use of a dangerous weapon) constitute double counting and overstate the seriousness of the offense.

B.     A sentence of 106 months.

C.     Citations to controlling authority are provided, infra.

**II**
**Introduction**

Anchrum entered a plea of guilty to the following counts:

Count I:     Possession of Controlled Substance With Intent To Distribute, 21 U.S.C. 841(a)(1) and (b)(1)( C);

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 2

> Count II:   Assault On Federal Officer, 18 U.S.C. 111(a)(1) and (b);
>
> Count III:  Assault On Federal Officer, 18 U.S.C. 111(a)(1) and (b);
>
> Count V:    Possession of Firearms in Furtherance of Drug Trafficking, 18 U.S.C. 924( c)(1)(A)(I);
>
> Count VI:   Criminal Forfeiture-Firearms, 18 U.S.C. 924(d)(1).

This Court should sentence Anchrum to the minimum of 106 months consistent with his plea agreement..

### III
### The Offense

On October 26, 2006, postal authorities intercepted a package addressed to M. Johnson. Pursuant to a search warrant, the authorities opened the package and determined that it contained controlled substances. The following day, the package, containing samples of the drugs, was delivered to Anchrum, who identified himself as M. Johnson.

After taking delivery of the package, Anchrum entered his car and drove away. Postal inspectors followed him in their own vehicles. The inspectors decided that Anchrum was driving in an evasive manner and was attempting to determine whether he was being followed. Accordingly, the inspectors attempted to do a traffic stop on Anchrum. One of the inspectors got out of his vehicle and Anchrum, in an attempt at departing the area, struck the inspector's leg, which caused a minor bruise.

Anchrum vehicle then proceeded away from the stop until it arrived at a dead end. Anchrum turned the vehicle around and proceeded back the way he had come. One of the inspectors attempted to place his vehicle in Anchrum's path, but Anchrum drove around it. At that point, Anchrum's vehicle struck another inspector's vehicle and became disabled.

Anchrum then attempted unsuccessfully to leave on foot. Anchrum was arrested and his vehicle was searched. The search revealed two handguns.

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 3

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

## IV
## The Defendant

Anchrum has lived an extraordinarily difficult life. His mother was only 16 years of age when he was born. She and Anchrum's father separated when he was 4 years of age. Anchrum's mother was on drugs, and so he went to live with his grandparents.

Anchrum's grandparents gave him the only stable home he had while growing up. His grandmother was strict, but she was fair. She insisted that he attend church regularly and that he actively participate in church-related activities, such as vacation bible school, choir, and ushering.

While he was living at his grandparents, an event occurred that is seared in his mind to this day. His mother, who was still on drugs, stole something from a man. The man, with some accomplices, came to Anchrum's house and removed his mother at gunpoint. They took her away from the house and severely beat her.

Anchrum's grandfather died in 1987, when Anchrum was 9 years of age. From the date of his death, things started going downhill. His grandmother's hip was broken during a purse snatching. As a result, she did not have the agility required to supervise and properly discipline Anchrum and his little brother. When discipline was required, she contacted one of Anchrum's uncles, who physically abused the boys instead of administering simple spankings.

As a result, Anchrum and his little brother were sent to live with his father and step mother. Unfortunately, both his father and step mother were on drugs, and they fought constantly. Ultimately, Anchrum's step mother kicked Anchrum and his brother out of the house.

Anchrum and his brother then went to live with an Aunt. She already had several children for which she was responsible, and taking on two more proved to be burdensome.

At this point, Anchrum and his brother traveled with his father to Anchorage. They were soon joined by Anchrum's half-brother and half-sister. Anchrum was expected to care for the younger

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

children, and he was forced to miss a considerable amount of school in order to care for his sister.

Anchrum's father, for a brief period, was able to get his drug habit under control. He found employment; but, after losing his job, he went back to drugs. Things at this point really started to spiral out of control.

Anchrum's father repeatedly failed to make rent payments, and so they were evicted time after time. Anchrum's full brother was sent back to L.A. to live with their mother. Anchrum became the adult in his father's house and had the responsibility to see to his remaining brother's and his sister's needs. He concluded that he had to do whatever he could to make sure that his brother and sister ate and had clean clothes. Anchrum recalls that he obtained employment and saved his money in order to purchase school clothes. Sadly, his father stole his accumulated savings.

During this period of time, Anchrum practically raised the younger children. He did his sister's hair before school, and after feeding the children their breakfast he made sure that they got off to school. He then went to school himself, but he made sure that he was home before the younger children arrived back from school. During the evenings, he monitored their progress and saw to it that they did their homework.

At times, food was so scarce that Anchrum was forced to stand in line for hours at charitable food banks for bread and milk for himself and his younger siblings.

The day came, though, when there was one final eviction. His little brother and sister were sent back to L.A. to live with their mother. Anchrum, however, stayed in Anchorage to complete his high school education while living with a friend. Anchrum was determined to finish school in order to set a good example for his young siblings.

After completing high school, Anchrum moved back to L.A. to live with his grandmother. His grandmother, by this time, was in her 90's and required Anchrum's assistance, which he readily provided.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 5

Anchrum, endeavoring to continue to set a good example for his brothers and sister, began college. Unfortunately he soon was forced to drop out of his classes in order to secure employment.

While in L.A., Anchrum volunteered his time to assist others. He cared for his aged grandmother. He volunteered at a rescue mission for the homeless. He hosted and coached a little league basketball team in the inner-city. He impressed others as being compassionate, caring, and generous.

Anchrum's criminal history includes two minor driving offenses (Unlicensed Driver; Driving With a Suspended License), for which he received two criminal history points.

The only other offense for which points were assessed involved resisting arrest. What occurred in that case is as follows: Anchrum was stopped by the police while driving a vehicle. He attempted to run away because he was not properly licensed. In L.A., when a suspect attempts to run and is caught it is not uncommon for the police to administer a beating. And, that is exactly what happened to Anchrum. The police caught up with him and proceeded to beat him. At that point, Anchrum's brother attempted to intervene and stop the police from beating Anchrum. In response, the officer drew his gun and pointed it at Anchrum's brother. Anchrum, as he has been doing all his life, acted to protect his little brother. He grabbed the officer's arm and said, "Please don't shoot my brother". Anchrum was charged with resisting arrest and ultimately entered a plea of guilty.

Subsequent to his arrest in the instant case, Anchrum has put his time to good use. He joined a bible study group and became a positive influence in his class. He enrolled in a bible correspondence course, and he has exercised the utmost diligence in pursuing his studies. He currently carries a near-perfect grade point average.

Anchrum is determined to take full advantage of all educational opportunities while her serves his sentence. Upon his release, he intends to own and successfully operate his own business. He also intends to establish non-profit corporations for the purpose of assisting troubled youths, disabled persons, and needy families.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501
907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 6

He respectfully requests that he be sent to a low-security facility so that he can focus on his education, and so that he can be away from troublemakers.

# III
# Discussion

The purpose of this sentencing memorandum is to assist this Court in determining "...a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [this] subsection [3553(a)]". United States v. Booker, 125 S.Ct. 738, 769-70 (January 12, 2005); 18 U.S.C. Sec 3553(a).

The Court in Booker states as follows:

> So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.,* 28 U.S.C. § 991 *et seq.,* makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004).

U.S. v. Booker, 125 S.Ct. 738, 757 (U.S.,2005).

18 U.S.C.A 3553(a) articulates the applicable goals and considerations as follows:

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 7

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

>    ...
>    **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>    **(7)** the need to provide restitution to any victims of the offense.

# 1
# Nature Of Offense/Anchrum's History

Anchrum admitted to possessing drugs with the intent to distribute them. He also admitted to possessing a firearm and to assault. On the other side of the ledger, there is evidence that Anchrum has enormous potential for leading a productive life. He is still young, and he is obviously intelligent. And, perhaps most significant, his history reveals that he places the welfare of others before his own welfare. He practically raised his younger siblings. He coached inner-city children. He cared for his aged grandmother. He devoted hours of his time to helping the homeless. As a young teenager, he braided his sister's hair so that she would be presentable in school. He wants to continue his practice of helping the less fortunate by establishing and administering non-profit corporations when he is released from prison. What is astonishing is that Anchrum cares so deeply for others, notwithstanding the awful hand that life dealt him.

Anchrum has no other serious convictions. Aside from driving related offenses, the only offense that is arguably serious in nature is the resisting arrest conviction. Anchrum acknowledges that he should not have resisted arrest, but respectfully submits that the offense is considerably mitigated. He should not have run from the officer, and Anchrum acknowledges that it was wrong to run. However, the officer should not have administered a beating as street justice for running. Furthermore, the officer should not have pointed a loaded firearm at Anchrum's brother for simply trying to stop the illegal beating. Anchrum has devoted his life to protecting his siblings, and his act of grabbing the officer's arm was intended to save his brother's life. Anchrum's fault in this whole course of events was choosing to run because he didn't have a drivers license. Thereafter, what

flowed from that incorrect choice is directly attributable to the officer's illegal behavior in administering extra-judicial punishment and pointing a loaded firearm at Anchrum's brother, who was only trying to save Anchrum.

Anchrum's life's course is not yet fixed; he has learned from his mistake; and, given a chance he will realize his enormous potential and make valuable contributions to society.

Anchrum experienced a horrid childhood. In reality, he had no childhood. His father was a drug addict who couldn't hold a job or make rent payments. His mother was also a drug addict who couldn't care for him. The only stability that Anchrum experienced in his childhood was at his grandmother's house, and that was all too fleeting. From then on, Anchrum by default had to assume the responsibility of caring for his brothers and sister. They were constantly being evicted from their apartments, and bounced from relative to relative. Anchrum even experienced the ultimate betrayal by his father when his father stole money that Anchrum had saved to clothe him and his siblings. Yet, in spite of these nightmarish circumstances, Anchrum never stopped caring for others. That, perhaps, is the greatest reason for confidence that Anchrum will never again offend. Unlike many damaged persons who appear before this Court, Anchrum, despite the many adversities he encountered during his childhood, has not grown cold or callused.

### 2
### Seriousness Of Offense/Respect For Law/Just Punishment

Anchrum freely admits that his conduct in this case was not only criminal but also morally wrong. Anchrum admitted that he assaulted the two federal officers. Anchrum asserts, however, that he did not intend to injure them. He admits that he drove towards the officers, but not with an intent to inflict injuries. Anchrum, at the time, was in a blind panic and his only intention was to get away. Indubitably, this was wrong. However, Anchrum's assaults were much less egregious than they would have been had he purposefully tried to injure anyone.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 9

Anchrum submits, though, that a lengthy prison sentence is not required, or appropriate. The plea agreement sentence of 106 months more than adequately reflects the seriousness of his offenses, promotes respect for the law, and achieves justice.

Anchrum is only 28 years of age. If he receives the statutory minimum, Anchrum will have sufficient time remaining to him to become a contributing member of her community. The likelihood of a person successfully settling into a productive life diminishes the older the person becomes.

### 3
### Deterrence

Deterring future misconduct on Anchrum's part will be accomplished by a sentence consistent with the plea agreement. Indeed, the statutory minimum is not required to meet that goal. That term in prison will more than amply deter others from committing similar criminal acts.

### 4
### Protection Of The Public

Anchrum submits that the plea agreement will protect the public. After losing 106 months of his life, Anchrum will eschew all acts that might result in additional prison time. A sentence in excess of the plea agreement minimum would be excessive.

### 5
### Education/Rehabilitation/Other Correctional Treatment

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 10

Anchrum welcomes the opportunity to participate in the 500-hour drug treatment program. He understands that under current BOP policy, that because of the charges to which he has plead guilty, he will not receive a reduction in his overall sentence upon successful completion of the program. In addition, Anchrum intends to continue his bible studies by correspondence and to complete whatever other courses that would assist him in meeting his goals of running his own business as well as non-profit corporations.

### 6
### Restitution

There is no indication that restitution is owed to any injured person.

Anchrum has taken responsibility for his actions by entering a plea of guilty.

## V
## Downward Departure: Criminal History Is Overstated

U.S.S.G. 4A1.3(b) provides: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

Such a departure is warranted in this case. The PSR calculated Anchrum's criminal history points as follows: He received one point for a 1998 misdemeanor unlicensed driver offense. He received one point for a 1999 misdemeanor driving while license is suspended offense. He received two points for a 2004 obstructing/resisting arrest offense. Two points were added pursuant to U.S.S.G. 4A1.1(d) because the instant offense was committed while Anchrum was on probation for the resisting/obstruction conviction. Finally, one point was added pursuant to U.S.S.G. 4A1.1(e) because the instant offense was committed less than two years after Anchrum was released from jail for the resisting/obstruction conviction. Accordingly, a total of 7 points were assessed, which placed Anchrum in Criminal History Category IV.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 11

Thus, two points were assessed for extremely old driving offenses. Anchrum submits that such old and minor driving offenses are wholly unpredictive of the likelihood of future criminal activity. Moreover, the resisting/obstruction conviction, from whence 5 points stem, was substantially mitigated by the officer's own illegal, rogue-like conduct and Anchrum's understandable desire to save his brother's life. Under the circumstances, Anchrum's conduct in that case was manifestly less egregious than is typically found in convictions of that nature.

The nature of Anchrum's prior crimes render his criminal past as significantly less serious than that of a typical Category IV offender. A Category IV Criminal History substantially over-represents the seriousness of Anchrum's criminal history, and it substantially over-represents the likelihood that he will commit new crimes. A downward departure is warranted.

## VI
## Downward Departure: History Of Abuse And Neglect

In determining what sentence to impose within a guideline range, or in evaluating whether a departure is warranted, this Court is free to take into consideration any information about the background, conduct, or character of the defendant, unless prohibited by law. U.S.S.G. 1B1.4. Similarly, 18 U.S.C.A. 3553(b) permits courts to depart from guideline ranges when it determines that there are mitigating circumstances not adequately taken into consideration by the Sentencing Commission when formulating the guidelines.

The Ninth Circuit has determined that sentencing courts, in evaluating departures, may taken into consideration extraordinary abuse and neglect suffered by a defendant in his childhood. U.S. v. Brown, 985 F.2d 478, 481 (9th Cir. 1993); United States v. Roe, 976 F.2d 1216, 1217-18 (9th Cir. 1992).

Anchrum suffered extraordinary abuse and neglect in his childhood. His parents were drug addicts, and as a result not only did Anchrum have to raise himself, but he was also forced, by default, to raise his brothers and sister. He was bounced from apartment to apartment and relative

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 12

to relative. His uncle physically abused him. Just so he and his siblings could eat, he was forced to stand long hours in food pantry lines.

Under the circumstances, it is a wonder that Anchrum escaped his childhood with his humanity intact. That he did is a testament to the underlying compassion and caring in the man. In light of unrelenting abuse and neglect Anchrum suffered a downward departure is warranted.

## VII
## Acceptance Of Responsibility

Anchrum gave timely notice of his intention to plead guilty. He then pled guilty and truthfully admitted to the facts undergirding the charged offenses. He therefore is entitled to a downward adjustment of two levels. U.S.S.G. 3E1.1(a). Furthermore, as recognized in the PSR, it is anticipated that the Government will moved for an additional downward adjustment of one level.

## VIII
## Conclusion

In consulting the advisory guidelines, this Court should grant downward departures because Anchrum's criminal history score significantly overstates the seriousness of his criminal history and because he suffered significant abuse and neglect as a child. An examination of the factors articulated in 18 U.S.C. Sec 3553(a) suggests that this Court, in sentencing Anchrum for Counts I, II, and III should impose a sentence consistent with the plea agreement. Certainly, if actual time is imposed for those counts, this court should sentence Anchrum at the extreme lower end of the advisory guideline range.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 13

The mandatory minimum sentence for Count V is five years, to be served after his sentence in the other counts is completed. An examination of the factors articulated in 18 U.S.C. Sec 3553(a) suggests that five years is more than ample to satisfy all sentencing goals.

Anchrum is a relatively youthful offender with great potential for leading a productive life, if given a chance. All appropriate sentencing goals are more than vindicated by the imposition of the plea agreement minimum sentence.

Respectfully submitted this 20th day of April, 2007 in Anchorage, Alaska.

/s/ Rex Lamont Butler
745 w. 4th Avenue, Ste., 300
Anchorage, Alaska, 99501
(907) 272-1497
(907) 276-3307
lawoffices@gci.net
ABN: 8310105

I Hereby Certify on the 20th day of April, 2007, a true and accurate copy of the foregoing instrument was served via electronic filing to the Office of the U.S. Attorney, 222 W. 7th Avenue, #9, Room 253, Anchorage, Alaska, 99501.

/s/ Rex Lamont Butler

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Anchrum, Defendant's Sentencing Memorandum.**
Page 14